So Mr. Murphy, you have reserved two minutes for rebuttal, so that gives you eight minutes to begin. You may proceed. Thank you, Your Honor. May it please the court, Tim Murphy, appearing for Mr. Chowdhury on behalf of the Federal Public Defender's Office. My client received an unreasonable sentence in this matter, and we reached this conclusion based on two principles. One, there was the unwarranted disparity between his sentence and co-defendant Mendez, as well as this sentence being greater than necessary to comply with the principles under 3553A. My client pleaded guilty to four counts of possessing Molotov cocktails. This was in relation to three incidents where the devices were, in fact, used. This was over two dates in June and July of 2022. There were no injuries. There was a small amount of damage. The co-defendant in this matter was only charged with regards to the June incidents. My client ended up being sentenced to 72 months. Mr. Mendez received 27 months. I would just point out some factors I'd ask the court to consider here with regards to the disparity issue, and that is that Mr. Mendez actually participated in two out of the three incidents when the Molotov cocktails were used. The district court in our matter did credit the assertion that this was the idea of Mr. Mendez. Mr. Mendez had a criminal history range of 51 to 60 months. He ended up with 27 months. Our only point to you is that we recognize that the district court was concerned with the dangerousness of the July incident, and my client did that on his own, and the court was concerned about that. We're saying that may be something that compelled the court to give my client a greater sentence. This just seems like an extremely much higher sentence than you would expect under these circumstances. Well, I mean, it's a month over the guidelines range, right? That's correct, Your Honor. So that doesn't seem like it's much higher than one would expect for three incidents involving Molotov cocktails? A couple of points, Judge. Number one, the government asked for 46 months here. As Your Honor knows, that was the top end of the plea agreement range. The probation office asked for 37 months, and did so primarily because of my client's addiction issue. My client was in a car accident. It ended up with him using opioids and being addicted, and his life started to spiral. That was a big issue to probation. Probation also looked at some statistics from the sentencing commission that the typical sentence for this type of range was around 46 to about 50 months. These are things that impacted the probation's recommendation. That's something I'd ask you to consider as well. Well, I mean, that's generally what we, I mean, when we're addressing disparity, we typically look at not an individual co-defendant, but actually these types of sentences writ large. That's correct. And then, of course, so it's higher than what the co-defendant got. As a general matter, that's what probation said, but this was three separate incidents, and then the judge went into great detail about what made this so dangerous. And so isn't that just really a second guess? You're asking us to second guess the weighing of the 3553A factors? No, and of course, Your Honor, I'm facing a very deferential abusive discretion standard here. I recognize that. I'll steal a little bit of language from Regas. A district court, of course, has wide latitude in placing whatever weight it deems appropriate to a particular 3553 factor, but this court in conducting a substantive unreasonableness review, of course, is not going to do it in a rubber-stamped fashion. I know the court knows that. What you're doing is you're evaluating whether those factors that the court assigns weight to can sustain the weight that the court has pointed to. And here, I would just point out a couple things about the weight that these factors were given. The dangerousness issue. If you look at the commentary under 2K2.1, dangerousness is something that was addressed by the Sentencing Commission. The idea that we're going to increase this one month above the maximum term, I recognize you have case law where the guidelines can be doubled sometimes. I'm only pointing out that if you're looking at this from 50,000 feet and you're saying we're going to address dangerousness, and this is why we're going to have this variance of a month, I would suggest that if the guidelines can already address the issue, this is an abusive discretion. And that's our position on that. Well, but I mean, look, I've sentenced a lot of people, and there's something sometimes that feels silly about sentencing someone to 71 months, and so 72 months is six years, right? Yes, Judge. So you're saying that it was improper to say six years as opposed to five years and 11 months? I'm saying, Judge, any variance has to be justified. And the justification we see in the Statement of Reasons includes some big-picture issues that just do not seem to be even possible to be accomplished in that extra month. While a month, Your Honor, doesn't compare to the rest of the term, it's a significant amount of time to my client, I can assure you of that, and I know you know that. I know you just went into great detail about how this could have resulted in the death of as many as 40 people. These are houses that were connected. The victim was residing with his pregnant wife and a child and older grandparents, I think. So, I mean, certainly this Court understood all this and attached weight to those things in a way that I don't think that you agree with, and that's fine. We may not agree either, but it is a deferential standard. So what was wrong about it? You're not saying the District Court got the facts wrong. We don't, no. We're not saying there's clearly erroneous determination of the facts. No, Judge. I would point out, if you look at the statement of reasons that are attached to the judgment in this case, there's a number of things that are checked off there that do not seem to go in the direction of the variance. I just point this out to the Court. One of the things has to do with my client's drug addiction, and that's checked off as a basis for this variance. I would point out to the Court that the Probation Office considered my client's drug dependence as a reason to go beneath the guideline range. And that's something I'd ask you to consider as well. With that, I recognize this Court's deferential standard. We're asking this Court to re-sentence, based on the totality of the circumstances, that there was an abuse of discretion here. I thank you, Judge. All right. Well, you've reserved two minutes for rebuttal, so thank you, Mr. Murphy. We'll now hear from Ms. Weingarten. Good morning, Your Honors, and may it please the Court. I'm Amanda Weingarten, and I represent the government. I also represented the government before the District Court. The District Court's sentence was substantively reasonable and should be affirmed. A 72-month sentence for throwing three Molotov cocktails at a house full of people and at a vehicle in the middle of the night is not so shockingly high as to damage the administration of justice. Well, I mean, if you do that in Brooklyn and you hurl it at a police car, you get a year. You know what I'm referring to. Yes, of course, Your Honor. So why isn't that a disparity that is struggling? Although the defense counsel below did not raise that case before the District Judge in that child re-sentencing, it was raised at Mr. Mendez's sentencing, and the District Court specifically distinguished that case and other cases, even Molotov cases that had appeared before Judge Cronin previously, the District Judge held that that case was distinguishable because the Molotov cocktails were thrown at a height of protest. They were thrown at a heightened state of emotion. We were deep in the throes of COVID, and there was a sense of civil unrest at issue there. That is quite different from the circumstances here, where Mr. Chowdhury acted, as the District Court found, quite deliberately. It was not an act of impulse the way that those other cases were. Here, the District Judge found it very persuasive that Mr. Chowdhury and his co-defendant went to the vehicle, drove around that area in the Bronx multiple times for about an hour, went and purchased gasoline, then went and lit the first Molotov cocktail. Now you're getting into facts that sound pretty similar to the Brooklyn case. Well, in this case, there was- Driving around, getting gasoline. Just procuring or preparing a Molotov cocktail takes time. And the dangerousness is pretty considerable. But look, maybe that's an outlier, and there doesn't need to be a uniform application across all cases. But the government itself was requesting a much lower sentence, right? Yes, Your Honor, the government sought a sentence at the high end of the stipulated guidelines range, which was 46 months. As counsel pointed out, that was essentially the national average at the time. However, the issue before Your Honors is, of course, not whether the government sentencing recommendation was reasonable, but whether the District Judge abused its discretion in finding that 72 months was sufficient but not greater than necessary. This sentence, like many sentences above the applicable guidelines range, was very reasonable. There's a broad range of sentences that can be reasonable. So 46 to 72, they're both within that range as far as you're concerned? Yes, Your Honor, and the district court carefully considered the precise mitigating factors that counsel raises on appeal, namely that he lacked recent criminal activity, he had a strong support network, and he suffered from narcotics addiction. But the district court found that those mitigating factors, and I quote, simply paled when one considers the seriousness of the offense. That's at Appendix 209. The district court found that the seriousness of the offense was the most important 3553A factor in this case. And the court found that Mr. Chowdhury's conduct, throwing homemade Molotov cocktails at a car and a household of people asleep in the middle of the night, was exceedingly dangerous. The court reasoned that it not only created a great risk of serious injury or even death, but it also caused significant trauma to the victims, as relayed in their letters to the court and as expressed during their colloquy with the court at sentencing. Contrary to appellant suggestion, this is not a case where the district court determined that two different sentences, 71 months on the one hand and 72 months on the other, would equally serve the purposes of 3553A. To the contrary, the district court made clear that this was a situation where the guidelines range of 57 to 71 months understated the seriousness of the offense. The district court properly weighed the factors and did not abuse its substantial discretion. In addition, Your Honor, the appellant's disparity argument, whether considered as a procedural or as a substantive challenge, is meritless. Procedurally, this court has made clear that there's no requirement under 3553A.6 or otherwise for a district court to consider or explain sentencing disparities between co-defendants. A court may consider that, but the district court has no obligation at all. Here, he had no obligation at all to consider Mr. Mendez's sentence, which in any event hadn't even occurred by the time Mr. Chowdhury was sentenced. But substantively, too, the argument is a non-starter, and here's why. Appellant and his co-defendant were not similarly situated. It's not just that the appellant engaged in throwing three Molotov cocktails, whereas Mr. Mendez only threw two. It's that these two incidents, these separate incidences in June and July, were different in kind. The district court reasoned that Mr. Chowdhury's arson of the house full of people, in which he acted alone, made his offense conduct considerably worse than Mr. Mendez's. Again, not just because he participated in that subsequent incident, but because the first incident involved setting fire to an empty car, whereas the second incident involved setting fire to a house full of sleeping people. And unlike in the first incident, where neither defendant had either met the victims whose car they arsoned, and where the motive was unclear, appellant specifically targeted someone that he believed to be inside the house when he threw the third Molotov cocktail in July. The district court understandably found it particularly troubling that appellant, and I quote, intended to harm someone that he believed was inside that house, that's at appendix 207, and that he did so in order to settle a dispute with that person. The court reasoned that Mr. Chowdhury needed to be deterred from settling beefs by targeting his victims with incendiary devices. So the June and July incidences were therefore different in kind, and the appellant was not similarly situated to Mr. Mendez. Unless there are further questions, the government would respectfully request that this court affirm the judgment. Thank you very much. Ms. Weingarten, we'll hear from Mr. Murphy for two minutes of rebut. Thank you, Your Honor. Just a couple of points. With regards to the July incident, and I'm not downplaying the dangerousness of throwing a Molotov cocktail, but I just want to remind the court of a couple of things. The item was thrown against the front. It wasn't thrown through the window. The fire that we're hearing about was put out within a minute. Okay, so the fire, the residence was not set. No, but it's not suggesting that it was just meant to be a warning, is it? That it was intentionally, that it was safe about it? No. Or is it just fortuitous? My only point though, Your Honor, is just the comment that I just heard. I just wanted to just clean up just a little bit there. I'm not downplaying the dangerousness of it. I want to remind the court, of course, the distinction between my client and his co-defendant here. My client went 15 years without getting into trouble, during the years that you would expect most young men to be getting in trouble. And that's in the early 20s to mid 30s. It's a factor. I never argued that this is something that the court had to look at. It's another factor to consider really as a parsimony issue. And I do remind the court, of course, the 46 months that was asked for by the government is completely consistent with this type of range and this type of prosecution. I did cite in my brief the Ministro Tapia decision. That was a re-entry case. And there was language on the record there from the district court. Kind of thinking out loud, I could have gone either way with this. I could have gone with the guidelines or not in the guidelines. I recognize that we don't have a record like that. I just remind the court, as a starting basis for any sentencing, you always have to start with the guidelines. And there's no question the district court here started with the 71 months as a basis and did compare it to 72. That was our point there. And I recognize we don't have the explicit language that the district court used in Ministro Tapia, I do recognize that. Unless there's any questions, I thank you. Thank you, Mr. Murphy. Thank you both. We will reserve decision.